UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| WILLIAM MARK LEAZURE | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | )   CASE NO. 1:09-cv-224 |
| | )   COLLIER/CARTER |
| APRIA HEALTHCARE INC. | ) |
|     Defendant. | ) |

MEMORANDUM and ORDER

Plaintiff and defendant have agreed to submit certain documents that defendant asserts are protected by the attorney-client privilege for an *in camera* review by the undersigned Magistrate Judge. Defendant has submitted these documents for an *in camera* review in response to Plaintiff's Interrogatory 7 which states:

> Please list the dates of any and all correspondence, in any forms, (i.e. telephone, electronic, email, handwritten, typewritten or any other such means) between Apria's corporate compliance department and the Chattanooga division between July 30, 2008 and April 1, 2009. For each such communication, please provide the following: (a) the person or persons involved in such communications; (b) the substance of such communication; and (c) any action taken by managerial employees at the Chattanooga division as a result of such communication.

Discussion

Subject matter jurisdiction in this case is based on diversity of citizenship pursuant to 28 U.S.C. § 1332. In a diversity action, the state law governing the action also governs the law of privilege applicable to the case. Fed.R.Evid. 501. The instant action is based on claims brought under Tennessee law, and thus Tennessee law defines the attorney-client privilege as it applies in this case. This Court is bound to apply the law as it believes the Tennessee Supreme Court would apply it. *See Shields v. Government Employees Hosp. Ass'n, Inc.*, 450 F.3d 643, 649 (6th Cir. 2006). "In that inquiry [this Court] may rely upon the analogous cases and relevant dicta in

1

the decisional law of the State's highest court, opinions of the State's intermediate courts to the extent that they are persuasive indicia of State Supreme Court direction, and persuasive opinions from other jurisdictions...." *Id.* (brackets are original, internal citation omitted).

Tennessee law favors making all relevant evidence available to the trier of fact except where protected by a specific privilege provided by the constitution, statutes, common law, and rules promulgated by the Tennessee Supreme Court. *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 212 (Tenn. Ct. App. 2002). The oldest such privilege in Tennessee is the attorney-client privilege which is recognized by both statute and common law. *Id.* "This privilege serves the administration of justice by encouraging full and frank communication between clients and their attorneys by sheltering these communications from compulsory disclosure." *Id.* (citing *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981); *Bryan v. State,* 848 S.W.2d 72, 79 (Tenn. Crim. App.1992). The party asserting the privilege bears the burden of proving that the privilege is applicable. *State ex rel. Flowers v. Tennessee Trucking Ass'n Self Ins. Group Trust*, 209 S.W.3d 602, 616 (Tenn. Ct. App. 2006). The attorney-client privilege is defined under the common-law of Tennessee as follows:

> The communications must involve the subject matter of the representation and must be made with the intention that they will be kept confidential. The privilege applies not only to the client's communications but also to the attorney's communications to his or her client when the attorney's communications are specifically based on the client's confidential communications or when disclosing the attorney's communications would, directly or indirectly, reveal the substance of the client's confidential communications.

*Boyd*, 88 S.W.3d at 213. The common law privilege as codified in Tenn. Code Ann. § 23-3-105 provides that "[n]o attorney ... shall be permitted, in giving testimony against a client, or person who consulted the attorney ... professionally, to disclose any communication made to the

attorney... as such by such person, during the pendency of the suit, before or afterwards, to the person's injury."

The attorney-client privilege is not, however, absolute and does not protect all communications between an attorney and his client. *Boyd,* 88 S.W.3d at 212; *State ex rel. Flowers*, 209 S.W.3d at 616. It is now generally accepted that communications between an attorney and client of primarily a business nature are outside the scope of the privilege. *See e.g., Edwards v. Whitaker*, 868 F.Supp 226, 228 (M.D.Tenn. 1994) ("the [attorney-client] privilege only applies if the lawyer is providing legal advice or services, and it will not protect disclosure of non-legal communications where the attorney acts as a business or economic advisor.") This issue of the principle nature of the advice given by the attorney, *i.e.*, business or legal, most often arises when in-house counsel offers advice to its corporate employer. *See e.g., In re Southern Industrial Banking Corp.*, 35 B.R. 643, 647 (Bankr. E.D. Tenn.1983). (while "the involvement of an attorney in the commercial endeavors of a corporation does not per say vitiate the attorney-client privilege, . . . the participation of general counsel in the business of the corporation likewise does not automatically cloak the business activity with the protection of the attorney-client privilege.")*; Puckett v. Arvin/Calspan Field Serv.*, 1986 WL 16714 **3 - **4 (6th Cir. 1986) (holding in-house counsel was acting in an administrative capacity during corporation's staff meeting and thus attorney-client privilege did not apply to conversation which occurred during meeting.); *Georgia Pacific Corp. v. GAF Roofing Mfg. Corp.,* 1996 WL 29392*3-*4 (S.D.N.Y. Jan. 25, 1996) (holding that in-house counsel who acted as negotiator as to certain provisions of a contract between two corporations was acting in a business capacity thereby rendering the attorney-client privilege inapplicable.). *See also North American Mortgage*

*Investors v. First Wisconsin Nat'l Bank of Milwaukee*, 69 F.R.D. 9, 11 (E.D. Wis. 1975) wherein the court stated:

> It is self-evident that a claim of an attorney-client relationship must fail unless one party to the relationship is in fact functioning as an attorney. The corporate capacity of the client and the fact that the attorney is "house counsel" do not render the privilege unavailing. [However], [t]he possession of a law degree and admission to the bar is not enough to establish a person as an attorney for purposes of determining whether the attorney-client privilege applies. For the privilege to exist, the lawyer must not only be functioning as an advisor, but the advice must be predominately legal, as opposed to business, in nature.

(Internal citations omitted). *Amway Corp. v. Procter & Gamble Co.*, 2001 WL 1818698 *5 (W.D. Mich. Apr. 3, 2001) ("Where... in-house counsel appears as one of many recipients of an otherwise business-related memo, the federal courts place a heavy burden on the proponent to make a clear showing that counsel is acting in a professional legal capacity and that the document reflects legal, as opposed to business, advice.")

I could find no Tennessee court decision which squarely addresses the issue of the attorney-client privilege as it applies to in-house counsel who perform different functions within a corporation. However, the cases discussed above which focus on the primary nature of the communications between client and attorney to determine if the communications are privileged comports seamlessly with the purpose of the attorney-client privilege under Tennessee law: "the purpose of the privilege is to shelter the confidences a client shares with his or her attorney *when seeking legal advice*, in the interest of protecting a relationship that is a mainstay of our system of justice." *Bryan v. State,* 848 S.W.2d 72, *79 (Tenn.Cr. App.,1992) (emphasis added). Thus, I conclude that if the Tennessee Supreme Court were faced with such an issue, it would apply the same standards as those discussed above. Accordingly, I further conclude that a communication between a client and his attorney which serves primarily a business or administrative purpose as

opposed to providing legal advice is a communication not protected by the attorney-client privilege.

One more point should be made in regard to the documents I have been asked to review. A pre-existing document which is not privileged in its own right cannot be made privileged simply by giving the document to the party's present counsel. *Fisher v. United States*, 425 U.S. 391, 403 (1976) ("[t]his Court and the lower courts have thus uniformly held that pre-existing documents which could have been obtained by court process from the client when he was in possession may also be obtained from the attorney by similar process following transfer by the client in order to obtain more informed legal advice."); *accord Gould, Inc. v. Mitsui Mining & Smelting Co.*, 825 F.2d 676, 679-80 (2d Cir. 1987) (pre-existing documents not prepared for the purpose of obtaining legal advice do not become invested with the privilege by tendering them to a lawyer); *In re Grand Jury Subpoena Duces Tecum Issued on June 9, 1982*, 697 F.2d 277, 278 (10th Cir. 1983) ("When [the attorney-client privilege] is raised as a bar to the production of pre-existing documents given by the client to his attorney to aid in his legal representation, it protects only that material which would have been privileged in the hands of the client.") *SEC v. Gulf & Western Indus. Inc.,* 518 F. Supp. 675, 681-82 (D.D.C. 1981) ("a corporate client should not be allowed to conceal a fact by disclosing it to the corporate attorney.") Thus, unless a pre-existing document is itself privileged, it will not become so simply by forwarding it to an attorney.

I will address only those documents that I conclude should be produced. As to these particular documents, the defendant has asserted the attorney-client privilege only. The basis for this assertion is that, in each instance, the documents involve, to varying degrees, communication with defendant's in-house counsel, Lan Nguyen Farrell. As discussed above, in-house counsel often performs more functions within a corporation than just providing legal

5

advice, and ferreting out the particular "hat" in-house counsel may be wearing at a given moment can be very difficult. This case presents no exception. It appears in-house counsel at issue in this case is also a compliance officer in the defendant's Compliance Department. There is likely overlap of legal and nonlegal duties in such a position. Defendant, who bears the burden of showing a document is protected by the attorney-client privilege, has provided very little information about the circumstances surrounding each document it claims is privileged. The chart below provides my ruling as to each document which I conclude must be produced. The description of these documents can be found in the defendant's privilege log.

| Document Bates Numbers | Reason Privilege Does Not Apply |
|---|---|
| Apria 5877 | In-house counsel's notes do not reveal client communications, do not give legal advice, and do not reveal legal strategy. Counsel is acting in response to the phone call from the plaintiff. It shall be produced. |
| Apria 5879 | These e-mails do not reveal attorney-client communications, and do not give legal advice. There is no indication that the attorney is acting in response to a communication from the client as opposed to the plaintiff's phone call. They shall be produced. |
| Apria 5881-5882 | The documents do not reveal attorney-client communications given for the purpose of seeking legal advice. They shall be produced. |
| Apria 5884-5885 | The documents do not reveal attorney-client communications given for the purpose of seeking legal advice. They shall be produced. |
| Apria 5891 | The Patient Equipment Request Form is a pre-existing document which is not privileged. It shall be produced. |
| Apria 5914-5916 | These e-mails are not communications to counsel; they are not for the purpose of receiving legal advice. They shall be produced |
| Apria 5918-5922 | While in-house counsel is copied on some of these e-mails, the e-mails are communications between employees and are not made for the purpose of receiving legal advice. They shall be produced |
| Apria 5924-5928 | While in-house counsel is copied on some of these e-mails, the e- |

|  | mails are communications between employees and are not made for the purpose of receiving legal advice. They shall be produced. |
|---|---|
| Apria 5938 | The Patient Equipment Request Form is a pre-existing document which is not privileged. It shall be produced. |
| Apria 5952 | This disciplinary notice is a pre-existing document which is not privileged. It shall be produced. |
| Apria 5956 | This corrective action plan is a pre-existing document which is not privileged. It shall be produced. |
| Apria 5961 | Defendant may redact the e-mail from Lan Farrell to Winborne Macphail as it is privileged. The remaining portion of the document contains no client communications and is not privileged. It shall be produced. |
| Apria 5962-5976 | These documents are from the plaintiff's wife. They are not client communications. They shall be produced. |
| Apria 5986-6016 | These documents are pre-existing document which are not privileged in their own right. They shall be produced. |
| Apria 6075-6076 | The e-mail from Beth Timko to Lan Farrell may be redacted. The e-mail from Vincent Amatangelo to Beth Timko and its attachment are not attorney-client communications made for the purpose of receiving legal advice. They shall be produced. |
| Apria 6132-6134 | The defendant may redact Winborne Macphail's e-mail to Lan Farrell. The remaining portions shall be produced because they are not attorney-client communications made for the purpose of receiving legal advice. |
| Apria 6152 | This e-mail from Lan Farrell to Mike Harper and Nadine Edwards does not provide legal advice. It provides information concerning an upcoming RIF and addresses a personnel matter. It is administrative in nature. It shall be produced. |
| Apria 6158-6159 | These e-mails do not contain attorney-client communications made for the purpose of giving or receiving legal advice. They provide information concerning an upcoming RIF and address a personnel matter. They are administrative in nature. They shall be produced. |

There is one last set of documents, Apria 6142 - 6150, which must be discussed. These document are not attorney-client communications and are therefore not privileged.. They are

7

forms concerning services provided by Apria to one of its clients.  There is a Letter of Medical Necessity dated June 26, 2008; a three page Patient Information Form from Gulf Coast Cardio-Pulmonary Diagnostics; a Letter of Medical Necessity dated June 27, 2008 with a two page Sales, Service and Rental Agreement attached; and two pages of computer print outs indicating defendant's contacts made with the client.  These documents contain private and confidential medical information concerning a client, N.M., whom, the plaintiff has alleged, defendant did not treat in an ethical manner.  If the plaintiff contends that these documents are relevant to the issues in this case and that he needs these documents either to support his claims or rebut defendant's defense, then plaintiff shall file a motion so stating and explaining the relevancy. The defendant will then have **three days (3)** in which to respond to the motion.

## Conclusion

For the reason stated herein, it is ORDERED defendant shall produce those documents to plaintiff identified in this Order on or before **Tuesday, September 7, 2010.**

ENTER.

*s/William B. Mitchell Carter*
UNITED STATES MAGISTRATE JUDGE