UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| WILLIAM MARK LEAZURE | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NO. 1:09-cv-224 |
| | ) | COLLIER/CARTER |
| APRIA HEALTHCARE INC. | ) | |
|     Defendant. | ) | |

<u>MEMORANDUM and ORDER</u>

Pursuant to the Court's order entered on August 27, 2010, defendant Apria Healthcare, Inc. (Apria) has submitted further documents for an *in camera* review to determine whether the documents are privileged or must be produced in response to discovery requests. In a Memorandum and Order entered on August 26, 2010, the Court set forth the general standards and requirements it must consider when determining whether a document is protected by the attorney-client privilege under Tennessee law. *See* Doc. 40, pp. 1-6. This discussion in the undersigned's August 26, 2010 Memorandum and Order is incorporated herein by reference. Of particular importance in this case is the role in-house counsel played during the decision making process leading to plaintiff's termination. Therefore, the undersigned will repeat the law concerning the applicability of the attorney-client privilege based on the role played by in-house counsel.

*Attorney-Client Privilege and the Role of In-House Counsel*

It is now generally accepted that communications between an attorney and client of primarily a business nature are outside the scope of the privilege. *See e.g., Edwards v. Whitaker*, 868 F.Supp 226, 228 (M.D.Tenn. 1994) ("the [attorney-client] privilege only applies if the lawyer is

1

providing legal advice or services, and it will not protect disclosure of non-legal communications where the attorney acts as a business or economic advisor.") This issue of the principle nature of the advice given by the attorney, *i.e.*, business or legal, most often arises when in-house counsel offers advice to its corporate employer. *See e.g., In re Southern Industrial Banking Corp.*, 35 B.R. 643, 647 (Bankr. E.D. Tenn.1983). (while "the involvement of an attorney in the commercial endeavors of a corporation does not per say vitiate the attorney-client privilege, . . . the participation of general counsel in the business of the corporation likewise does not automatically cloak the business activity with the protection of the attorney-client privilege."); *Puckett v. Arvin/Calspan Field Serv.*, 1986 WL 16714 **3 - **4 (6th Cir. 1986) (holding in-house counsel was acting in an administrative capacity during corporation's staff meeting and thus attorney-client privilege did not apply to conversation which occurred during meeting.); *Georgia Pacific Corp. v. GAF Roofing Mfg. Corp.*, 1996 WL 29392*3-*4 (S.D.N.Y. Jan. 25, 1996) (holding that in-house counsel who acted as negotiator as to certain provisions of a contract between two corporations was acting in a business capacity thereby rendering the attorney-client privilege inapplicable.). *See also North American Mortgage Investors v. First Wisconsin Nat'l Bank of Milwaukee,* 69 F.R.D. 9, 11 (E.D. Wis. 1975) wherein the court stated:

> It is self-evident that a claim of an attorney-client relationship must fail unless one party to the relationship is in fact functioning as an attorney. The corporate capacity of the client and the fact that the attorney is "house counsel" do not render the privilege unavailing. [However], [t]he possession of a law degree and admission to the bar is not enough to establish a person as an attorney for purposes of determining whether the attorney-client privilege applies. For the privilege to exist, the lawyer must not only be functioning as an advisor, but the advice must be predominately legal, as opposed to business, in nature.

(Internal citations omitted). *See also Amway Corp. v. Procter & Gamble Co.*, 2001 WL

1818698 *5 (W.D. Mich. Apr. 3, 2001) ("Where... in-house counsel appears as one of many recipients of an otherwise business-related memo, the federal courts place a heavy burden on the proponent to make a clear showing that counsel is acting in a professional legal capacity and that the document reflects legal, as opposed to business, advice."); *In re Grand Jury Subpoenas*, 803 F.2d 493, 496 (9th Cir. 1986) ("The privilege does not permit an attorney to conduct his client's business affairs in secret"); *Rusnak v. Dollar General Corp.*, 2005 WL 284074 *1(S.D. Ohio 2005) ("A lawyer, who functions as an investigator, is not functioning as a lawyer and not entitled to assert the [attorney-client] privilege.")

I could find no Tennessee decision which squarely addresses the issue of the attorney-client privilege as it applies to in-house counsel who perform different functions within a corporation. However, the cases discussed above which focus on the primary nature of the communications between client and attorney to determine if the communications are privileged comports seamlessly with the purpose of the attorney-client privilege under Tennessee law: "the purpose of the privilege is to shelter the confidences a client shares with his or her attorney when seeking legal advice, in the interest of protecting a relationship that is a mainstay of our system of justice." *Bryan v. State*, 848 S.W.2d 72, *79 (Tenn.Cr. App.1992) (emphasis added). Thus, I conclude that if the Tennessee Supreme Court were faced with such an issue, it would apply the same standards as those discussed above. Accordingly, I further conclude that a communication between a client and his attorney which serves primarily a business or administrative purpose as opposed to providing legal advice is a communication not protected by the attorney-client privilege.

### The Work Product Doctrine

The work product doctrine, articulated by the Supreme Court in *Hickman v. Taylor*, 329 U.S. 495 (1947), protects the mental processes of an attorney from inquiry by an opposing party. *Hickman,* 329 U.S. at 511. "The doctrine is designed to allow an attorney to 'assemble information, sift what he considers to be relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference ... to promote justice and to protect [his] client's interests.'" *In re Columbia/HCA Healthcare Corp. Billing Practices Litigation*, 293 F.3d 289, 294 (6th Cir. 2002) (brackets original) (quoting *Hickman*, 329 U.S. at 510).

The work product doctrine, as it applies to documents and tangible things, is now embodied in Fed. R. Civ. P. Rule 26(b)(3). Under Rule 26, if documents and other tangible things were prepared in anticipation of litigation by or for the other party or by or for the other party's representative, a party may obtain discovery of the materials "only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed. R. Civ. P. 26(b)(3).

"The work-product doctrine is a procedural rule of federal law;" thus, Rule 26(b)(3) applies in diversity cases. *In re Professionals Direct Ins. Co*, 578 F.3d 432 (6th Cir. 2009). The party seeking work product protection bears the burden to show such protection is warranted. *In re Columbia/HCA Healthcare Corp. Billing Practices Litigation*, 293 F.3d at 294. Even if a party is able to show substantial need and undue burden to obtain "fact work product," "opinion work product," material reflecting the attorney's mental impressions, opinions, or legal theories, remains unobtainable. *Id.*

4

Often, application of the work product doctrine turns on the meaning of "in anticipation of litigation." The Sixth Circuit addressed this issue in *In re Professionals Direct Ins. Co*, 578 F.3d 432 (6th Cir. 2009). In that case, an insurance company sought a writ of mandamus to vacate a discovery order by the district court requiring it to produce documents which the insurance company alleged were work product. The discovery order had been issued in the underlying action, brought by a law firm against the law firm's malpractice insurance company, in which the law firm alleged breach of contract and bad faith in the insurance company's processing of a malpractice claim against the law firm.

In examining this issue of when work product protection attached, the Sixth Court instructed:

> To determine whether a document has been prepared "in anticipation of litigation," and is thus protected work product, we ask two questions: (1) whether that document was prepared "because of" a party's subjective anticipation of litigation, as contrasted with ordinary business purpose; and (2) whether that subjective anticipation was objectively reasonable. United States v. Roxworthy, 457 F.3d 590, 594 (6th Cir.2006). If a document is prepared in anticipation of litigation, the fact that it also serves an ordinary business purpose does not deprive it of protection, id. at 598-99, but the burden is on the party claiming protection to show that anticipated litigation was the "driving force behind the preparation of each requested document." Roxworthy, 457 F.3d at 595 (quoting Nat'l Union Fire Ins. Co. of Pittsburgh v. Murray Sheet Metal Co., 967 F.2d 980, 984 (4th Cir.1992)).

*In re Professionals Direct Ins. Co*, 578 F.3d at 439. In applying these principals, the Court stated, "[m]aking coverage decisions is a part of the ordinary business of insurance and if the 'driving force' behind the preparation of these documents was to assist Professional Direct in deciding coverage, then they are not protected by the work-product doctrine." *Id.* The Court concluded the district court had properly ordered the disclosure of documents the insurance company had generated after the law firm had notified the insurance company of a potential malpractice claim

5

but before the insurance company had issued a second reservation of right letter to the law firm. *Id.* at 439. Many of the documents which the Sixth Circuit held were properly disclosed had been prepared by attorneys for the insurance company whom the Court found "had dual functions" in that "[t]hey were advising Professionals Direct on the business decision of whether to deny coverage and they were doing legal work in anticipation of litigation." *Id.* at 439. If the driving force behind preparation of these documents was to assist Professional Direct in deciding coverage, then these documents were not protected by the work product doctrine, even if prepared by attorneys. *Id.*; *accord.*, *Caremark Inc., v. Affiliated Computer Serv. Inc.*, 195 F.R.D. 610, 616 (N.D. Ill. 2000) ("[i]f a document would have been created regardless of whether litigation was anticipated or not, it is not work product."); *Guidry v. Jen Marine LLC,* 2003 WL 22038377 *5 (E.D. La. Aug. 22, 20003) ("if the party asserting the privilege cannot make a factual showing that the primary purpose of the insurance investigation was in anticipation of litigation, the court may conclude that the investigation was conducted in the ordinary course of investigating a potential insurance claim.")

Accordingly, as with the attorney-client privilege inquiry, the Court must consider the function an attorney is fulfilling at the time the document at issue is created. Documents created for an ordinary business purpose by an attorney functioning as a business advisor will not be considered as having been created in anticipation of litigation, even if one could foresee that the document would become relevant if litigation were eventually commenced.

The documents submitted by Apria raise the always difficult and uncomfortable question of the "hat" in-house counsel wears. Based on the considerations discussed above, I conclude that the documents bearing on the reduction in force (RIF), Apria's selection of the plaintiff as

the employee to terminate in the RIF, and the timing of plaintiff's termination in the RIF should be produced. These documents discuss the reasons for plaintiff's selection as the person to be terminated in the RIF, when the RIF should be executed, *i.e.,* when plaintiff should be terminated, and how other employee disciplinary actions shall be approached. These types of considerations are part of the normal process of determining who is to be terminated in a RIF and when and how to carrying out a RIF; they are normal HR functions.

Apria has simply not prevailed in its burden to show that in-house counsel, Lan Farrell, was providing legal advice and/or legal guidance regarding the RIF and plaintiff's termination in the RIF. The documents submitted by Apria do not, by themselves, indicate her role was one of a legal advisor, and no affidavit has been submitted to explain or clarify her role. Rather, it appears that Lan Farrell's role was that of a business advisor and an active participant and decision-maker in the decision to terminate plaintiff. Based on my conclusion that Lan Farrell was not acting as a legal advisor in relation to the RIF and plaintiff's termination, and based on my conclusion that the documents at issue reflect ordinary business purposes when making a decision to terminate employment in a RIF, I conclude neither the attorney-client privilege nor the work product doctrine applies to the following documents, and they should be produced: Apria 11325,11326, 11328, 11330, 11333, 11335, 11337, 11365, 11367, 11371, 11384, 11387. It is further ORDERED that Apria shall produce said documents on or before **Thursday October 14, 2010.**

SO ORDERED.

*s/William B. Mitchell Carter*
UNITED STATES MAGISTRATE JUDGE